**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                      )
DAVID CANTU, et al.,              )
                                      )
        Plaintiffs,         )
                                      )
      v.                        )    Civil Action No. 11-541 (RBW)
                                      )
THE UNITED STATES OF AMERICA,   )
et al.,                               )
                                      )
        Defendants.        )
_____)

**MEMORANDUM OPINION**

       The plaintiffs in this putative class action are Hispanic farmers who allege that the defendants—the United States, the United States Department of Justice, the United States Department of Agriculture ("USDA"), and the heads of those agencies—have violated their constitutional rights to due process and equal protection by offering to settle the plaintiffs' discrimination claims on terms less favorable to the settlements provided to similarly-situated African-American and Native American farmers. See First Amended Class Action Complaint for Declaratory, Injunctive, and Other Relief ("Am. Compl.") ¶¶ 1-2. Currently before the Court is the defendants' motion to dismiss. Upon careful consideration of the parties' submissions,[1] the Court concludes for the following reasons that the defendants' motion must be granted.[2]

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: the Memorandum in Support of Defendants' Motion to Dismiss First Amended Class Action Complaint ("Defs.' Mem."); the Plaintiffs' Opposition to Defendants' Motion to Dismiss First Amended Class Action Complaint ("Pls.' Opp'n"); and the Reply in Support of Defendants' Motion to Dismiss First Amended Class Action Complaint ("Defs.' Reply").

[2] The Court is contemporaneously issuing on this date a Memorandum Opinion in Love v. Vilsack, No. 00-2502 (D.D.C.), which addresses claims of female farmers similar to those asserted in this case.

I. BACKGROUND

Between 1997 and 2000, African-American, Native American, Hispanic, and female farmers filed four similar class action lawsuits alleging that the USDA "routinely engaged in the discrimination of individuals on the basis of race, ethnicity, or gender in the administration of its farm benefit programs, and failed to investigate the claims of farmers who filed complaints based on such conduct with [the] USDA." Am. Compl. ¶ 3; see Pigford v. Glickman, Nos. 97-1978, 98-1693 (D.D.C.) ("Pigford I") (African-American farmers); Keepseagle v. Vilsack, No. 99-03119 (D.D.C.) (Native American farmers); Garcia v. Vilsack, No. 00-2445 (D.D.C.) (Hispanic farmers); Love v. Vilsack, No. 00-2502 (D.D.C.) (female farmers). A brief overview of those cases is necessary to understand the plaintiffs' claims in this action.

On October 9, 1998, Judge Paul L. Friedman of this Court certified Pigford I as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2) for purposes of liability.[3] Pigford v. Glickman, 182 F.R.D. 341, 352 (D.D.C. 1998). Judge Friedman later vacated his original class certification order on January 5, 1999, and certified a new class pursuant to Rule 23(b)(3).[4] Pigford v. Glickman, 185 F.R.D. 82, 92 (D.D.C. 1999). Following the Court's class certification rulings, the parties in Pigford I negotiated a class-wide settlement, which Judge Friedman approved in a consent decree issued on April 14, 1999. Id. at 113. The Pigford I consent decree "did not provide for the automatic payment of damages to any plaintiff"; rather, "it established a non-judicial mechanism," i.e., an administrative claims process, "by which each class member

---

[3] Rule 23(b)(2) permits class certification where, among other things, "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

[4] Rule 23(b)(3) permits class certification where, among other things, "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

would have an opportunity to demonstrate that he or she had been the victim of past discrimination by the USDA and therefore was entitled to compensatory damages." In re Black Farmers Discrim. Litig., 856 F. Supp. 2d 1, 9 (D.D.C. 2011).

The Pigford I consent decree imposed a deadline for African-American farmers to submit their claims for administrative adjudication, id. at 10, and many farmers tried, unsuccessfully, to file claim packages after the deadline expired, id. at 11. To address this problem, "Congress resurrected the claims of those who had unsuccessfully petitioned the Arbitrator for permission to submit late claim packages" by enacting "the Food, Conservation, and Energy Act of 2008." Id. This Act provides that "[a]ny Pigford claimant who has not previously obtained a determination on the merits of a Pigford claim may, in a civil action brought in the United States District Court for the District of Columbia, obtain that determination." Pub. L. 110–234, § 14012(b), 122 Stat. 923, 1448 (2008). After the Act became effective, thousands of African-American farmers filed suit in this Court. In re Black Farmers, 856 F. Supp. 2d at 13. Those cases are collectively known as Pigford II. Id. The parties in Pigford II reached a class-wide settlement agreement on February 18, 2010, id., which Judge Friedman approved, id. at 42. The settlement agreement largely maintained the administrative claims process utilized in Pigford I, with some modifications. Id. at 22.

Keepseagle proceeded much like Pigford I, albeit at a different pace. Judge Emmet G. Sullivan of this Court certified that case as a class action pursuant to Rule 23(b)(2). See Keepseagle v. Veneman, No. 99-03119, 2001 WL 34676944, at *1 (D.D.C. Dec. 12, 2001). Nine years later, in 2010, the parties reached a class-wide settlement agreement, which Judge Sullivan approved. See Keepseagle v. Veneman, No. 99-03119, ECF No. 577 (D.D.C. Nov. 1, 2010) (order granting preliminary approval of settlement). The settlement agreement in

3

Keepseagle established an administrative claims process for Native American farmers that was similar, though not identical, to the process established in Pigford I. See Am. Compl. ¶ 49; Defs.' Mem. at 4-5.

Garcia and Love followed a different path. Judge James Robertson, a former member of this Court, denied the plaintiffs' motions for class certification in both actions.[5] See Am. Compl. ¶¶ 38-39; Garcia v. Veneman, 224 F.R.D. 8 (D.D.C. 2004), aff'd and remanded sub nom. Garcia v. Johanns, 444 F.3d 625 (D.C. Cir. 2006); Love v. Veneman, 224 F.R.D. 240 (D.D.C. 2004), aff'd in part, remanded in part sub nom. Love v. Johanns, 439 F.3d 723 (D.C. Cir. 2006). And the defendants have not offered to settle the cases on a class basis pursuant to Rule 23, as they had in the Pigford and Keepseagle cases. See Am. Compl. ¶¶ 59-60. The defendants have, however, developed a different administrative claims process for Hispanic and female farmers. See id. ¶ 51; Love v. Vilsack, No. 00-2502, ECF No. 160 ¶ 88 (D.D.C.). This administrative claims process is the subject of the instant lawsuit.

The plaintiffs instituted this putative class action on March 25, 2011. They are Hispanic farmers, some of whom are plaintiffs in Garcia, who allegedly "were subjected to, and continue to be subjected to, USDA discrimination in its farm benefit programs" and who "are potential claimants" under the defendants' administrative claims process for Hispanic farmers. Am. Compl. ¶ 12. The plaintiffs assert that the defendants' administrative claim process is "substantially different from and substantially less favorable than the settlements provided to African-American and Native American farmers" in the Pigford and Keepseagle cases. Id. ¶ 53. Claiming that this disparity "can only be explained on a racially discriminatory basis," the plaintiffs allege that the administrative claims process violates "the equal protection and due

---

[5] Upon Judge Robertson's retirement from this Court, Garcia and Love were reassigned to the undersigned member of the Court.

process guaranteed by the Constitution of the United States and constitutes arbitrary and capricious and unlawful agency action under the [Administrative Procedure Act ("APA")], 5 U.S.C. § 706(2)(A)." Id.

By Order dated December 21, 2011, the Court stayed all proceedings in this case, finding it unripe for judicial review based on the interlocutory nature of the defendants' administrative claims process at that time. ECF No. 27. Once the defendants finalized the administrative claims process, the plaintiffs, with leave of the Court, submitted an amended complaint. The defendants have now moved to dismiss that complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[6]

## II. STANDARD OF REVIEW

Rule 12(b)(1) allows a party to move to dismiss "for lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). When a defendant moves to dismiss under Rule 12(b)(1), "the plaintiff[] bear[s] the burden of proving by a preponderance of the evidence that the Court has subject matter jurisdiction." Biton v. Palestinian Interim Self-Gov't Auth., 310 F. Supp. 2d 172, 176 (D.D.C. 2004); see Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). A court considering a Rule 12(b)(1) motion must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting [a] plaintiff the benefit of all inferences that can be derived from the facts alleged.'" Am. Nat'l Ins. Co. v. FDIC, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting Thomas v. Principi, 394 F.3d 970, 972 (D.C. Cir. 2005)). However, "the district court may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction." Jerome Stevens Pharm., Inc. v. FDA, 402

---

[6] Because the Court grants the defendants' motion on jurisdictional grounds under Rule 12(b)(1), it does not consider the defendants' arguments urging dismissal pursuant to Rule 12(b)(6).

F.3d 1249, 1253 (D.C. Cir. 2005) (citing Herbert v. Nat'l Acad. of Scis., 974 F.2d 192, 197 (D.C. Cir. 1992)).

### III. ANALYSIS

In moving to dismiss for lack of subject-matter jurisdiction, the defendants argue, among other things, that the plaintiffs lack standing to challenge the defendants' administrative claims process. Defs.' Mem. at 10. For the reasons that follow, the Court agrees.

"Because Article III limits the constitutional role of the federal judiciary to resolving cases and controversies, a showing of standing 'is an essential and unchanging' predicate to any exercise of [federal] jurisdiction." Fla. Audubon Soc'y v. Bentsen, 94 F.3d 658, 663 (D.C. Cir. 1996) (en banc) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)). "'The irreducible constitutional minimum of standing contains three elements: (1) injury-in-fact, (2) causation, and (3) redressability.'" Nat'l Ass'n of Home Builders v. EPA, 667 F.3d 6, 11 (D.C. Cir. 2011) (citation omitted). "'Thus, to establish standing, a litigant must demonstrate a personal injury fairly traceable to the [opposing party's] allegedly unlawful conduct [that is] likely to be redressed by the requested relief.'" Id. (citation omitted). "The absence of any one of these three elements defeats standing." Newdow v. Roberts, 603 F.3d 1002, 1010 (D.C. Cir. 2010).

The injury asserted by the plaintiffs is that the defendants' administrative claims process "subjects them to unequal treatment as compared to other racial groups," insofar as it "requires Hispanic claimants to prove additional factual elements and, in some cases, provide additional documentary evidence to obtain relief," which "African[-]American and Native American farmers need not [provide]." Pls.' Opp'n at 13. As redress for this alleged injury, the plaintiffs request two forms of judicial relief: (1) a declaratory judgment that the defendants' actions

6

"violate the constitutional rights of [the p]laintiffs and constitute arbitrary and capricious and unlawful agency action under the APA," and (2) a "permanent injunction" prohibiting the defendants from discriminating against Hispanic farmers in the settlement of their claims against the USDA and compelling the defendants "to provide [the p]laintiffs with a class settlement which includes a class for settlement purposes under Rule 23 of the Federal Rules of Civil Procedure in the Garcia case that is equivalent to that which [the d]efendants provided in the settlements with the African-American and Native American farmers." Am. Compl. at 34-35.

The parties' standing arguments focus on whether the plaintiffs have satisfied the first element of Article III standing—injury-in-fact. According to the defendants, the plaintiffs "have suffered no harm whatsoever as a result of" the administrative claims process "because their participation in it is strictly optional, not mandatory." Defs.' Mem. at 11 (emphasis omitted). The plaintiffs respond that the defendants "cite[] no authority for the extraordinary proposition that civil rights plaintiffs lack standing to challenge discriminatory government programs unless those programs are mandatory," and that this position is irreconcilable with "established equal protection jurisprudence." Pls.' Opp'n at 13.

The Court need not address these arguments because, even assuming the plaintiffs have established a sufficient injury-in-fact, they have failed on the final element of the standing test—redressability.[7] To satisfy this element, a plaintiff must show in the first instance that the court is capable of granting the relief sought. See Newdow, 603 F.3d at 1010-11 (plaintiffs could not establish redressability because "[i]t [was] impossible for th[e] court to grant [their requested] relief"); Swan v. Clinton, 100 F.3d 973, 976 (D.C. Cir. 1996) (indicating that the

---

[7] Because "[t]he federal courts are under an independent obligation to examine their own jurisdiction," and because "standing 'is perhaps the most important of [the jurisdictional] doctrines,'" FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 231 (1990) (quoting Allen v. Wright, 468 U.S. 737, 750 (1984)), the Court is not limited to the arguments raised in the parties' briefs in evaluating whether the plaintiffs have Article III standing.

"'redressability' element of standing" entails the question of "whether a federal court has the power to grant [the plaintiff's requested] relief"); Lozansky v. Obama, 841 F. Supp. 2d 124, 132 (D.D.C. 2012) ("Plaintiffs . . . lack standing because the Court cannot issue the requested writ of mandamus, and thus cannot redress the [claimed] injury."). Here, the primary relief sought by the plaintiffs is an injunction compelling the defendants to settle with the plaintiffs on terms equivalent to the settlements in the Pigford and Keepseagle cases. See Am. Compl. at 35. But it is settled law that "[a] judge may not coerce a party into settling." Gevas v. Ghosh, 566 F.3d 717, 719 (7th Cir. 2009); accord In re NLO, Inc., 5 F.3d 154, 157 (6th Cir. 1993); Newton v. A.C. & S., Inc., 918 F.2d 1121, 1128 (3d Cir. 1990); G. Heileman Brewing Co., Inc. v. Joseph Oat Corp., 871 F.2d 648, 653 (7th Cir. 1989) (en banc); In re Ashcroft, 888 F.2d 546, 547 (8th Cir. 1989) (per curiam); Kothe v. Smith, 771 F.2d 667, 669 (2d Cir. 1985); Del Rio v. Northern Blower Co., 574 F.2d 23, 26 (1st Cir. 1978); see also MacLeod v. D.C. Transit Sys., Inc., 283 F.2d 194, 195 n.1 (D.C. Cir. 1960) (indicating that a trial judge may "convey[] his views about [a] settlement [offer] to the litigants' counsel . . . who [are] free to accept or reject the [j]udge's views," so long as the judge does not "in any way [bring] 'pressure' on the parties" to settle). Coercing parties to settle is not only beyond a federal court's authority, but also is prohibited by the ethical rules that govern the conduct of federal judges. See Code of Conduct for United States Judges Cannon 3A(4) (Commentary) ("A judge may encourage and seek to facilitate settlement but should not act in a manner that coerces any party into surrendering the right to have the controversy resolved by the courts."). And in cases, such as this one, "in which the United States is interested," only designated government officials and agencies are "authorized to settle litigation." United States v. LaCroix, 166 F.3d 921, 923 (7th Cir. 1999). Issuing the plaintiffs' requested injunction compelling the government to make a specific settlement offer to

the plaintiffs would improperly "transfer the litigant's authority to th[is] judge," in violation of the Court's duty to "respect th[e] decision[s] . . . made by those in the Executive Branch of government entitled to manage litigation." Id.  Because this Court is powerless to compel the defendants to settle with the plaintiffs in any particular manner or on any particular terms, it cannot grant the injunctive relief requested by the plaintiffs.

The plaintiffs also seek a declaratory judgment that the defendants' administrative claims process is unconstitutional and violative of the APA.  See Am. Compl. at 34-35.  While the Court has authority to grant such relief, see Declaratory Judgment Act, 28 U.S.C. § 2201 (2006); APA, 5 U.S.C. § 706(2), a question remains as to whether granting this relief would actually redress the plaintiffs' alleged injury, see Newdow, 603 F.3d at 1011 (the plaintiffs' "second redressability problem is that declaratory and injunctive relief against the defendants . . . would not prevent the claimed injury").  As previously noted, the plaintiffs' claimed injury is the defendants' denial of equal treatment to them in settling their discrimination claims, as compared to the settlement offers the defendants provided to similarly-situated African-American and Native American farmers.  Pls.' Opp'n at 13.  The District of Columbia Circuit has recognized that there are "two remedial alternatives" to redress an equal protection injury such as the one asserted in this case: (1) wholesale invalidation of the government action, or (2) extension of the government benefit to those aggrieved by the exclusion.  See Jacobs v. Barr, 959 F.2d 313, 317 (D.C. Cir. 1992) (quoting Heckler v. Matthews, 465 U.S. 728, 738-39 (1984)).  Neither type of relief would be afforded to the plaintiffs by a ruling holding the defendants' administrative claims process in this case unlawful and setting it aside.  Indeed, such a ruling would not (and could not) invalidate the settlement offers provided by the defendants to African-American and Native American farmers, nor would it (or could it) compel the defendants, for the reasons set

forth above, to make an equivalent settlement offer to the plaintiffs. In other words, it would not provide either of the two forms of relief that would redress the plaintiffs' alleged equal protection injury. See id. The ruling would merely place the plaintiffs in the position they were in prior to the settlement offer made by the defendants. Thus, the plaintiffs' requested declaratory relief would not redress the injury they claim.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that the plaintiffs have failed to satisfy the redressability element of Article III standing. Accordingly, the defendants' motion to dismiss for lack of subject-matter jurisdiction is granted.

**SO ORDERED** this 11th day of December, 2012.[8]

REGGIE B. WALTON
United States District Judge

---

[8] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.